FERRIS E. and MARY V. TRAYLOR, Petitioners v. COMMISSIONER OF INTERNAL REVENUE, Respondent
Traylor v. Commissioner
Docket Nos. 44931-85; 43531-86
United States Tax Court
T.C. Memo 1990-132; 1990 Tax Ct. Memo LEXIS 132; 59 T.C.M. (CCH) 93; T.C.M. (RIA) 90132; March 14, 1990
Ferris E. Traylor, pro se. Diane L. Worland, for the respondent. SHIELDS
*225 MEMORANDUM FINDINGS OF FACT AND OPINION SHIELDS, Judge: In docket No. 44931-85, respondent by notice of deficiency dated October 10, 1985, determined the following deficiencies in and additions to petitioners' Federal income tax: Additions to Tax
Year
Deficiency
Sec. 6653(a)
1978
$  45,496.08
$ 2,274.80
1979
167,118.40
8,355.92
In docket No. 43531-86, respondent by notice of deficiency dated August 14, 1986, determined the following deficiencies in and additions to petitioners' Federal income tax: Additions to Tax Pursuant to Section [1]
Year
Deficiency
6653(a)(1)
6653(a)(2)
6661
1980
$ 174,354.26
$  8,717.71
N/A
$      0.00
1981
226,160.92
11,308.05
*  0.00
1982
661,793.00
33,089.65 **  66,179.30
1983
12,514.00
625.70 *** 1,251.40
*135 These cases have been consolidated for purposes of trial, briefing and opinion. In an amendment to his answer in docket No. 43531-86 respondent set forth two alternative positions with respect to 1981. In his first alternative position respondent determined that with respect to certain stock in Horizon Communications, Inc., petitioner [2] received in 1981 a discharge of indebtedness in the amount of $ 3,758,418.88 which resulted in an increased deficiency of $ 2,594,182.08 and increased additions to tax of $ 129,708.95 pursuant to section 6653(a)(1) and 50 percent of the interest due on $ 2,594,182.08 pursuant to section 6653(a)(2). In his second alternative position respondent determined that with respect to the stock in Horizon Communications, Inc., petitioner in 1981 realized a long-term capital gain in the amount of *136 $ 1,300,700 and ordinary income from the discharge of indebtedness in the amount of $ 1,758,419. According to respondent the second alternative position resulted in an increased deficiency for 1981 of $ 1,471,822.08 with increased additions to tax of $ 73,590.95 pursuant to section 6653(a)(1) and 50 percent of the interest due on $ 1,471,822.08 pursuant to section 6653(a)(2). After concessions the issues for decision are: (1) whether the statute of limitations bars the assessment of deficiencies for the years 1978 through 1982; (2) whether petitioners received income through the payment of some of their personal expenses by Property Developers, Inc.; (3) whether deposits to an account with Pan American Bank which was in the name of petitioners' son should be considered income to petitioners; (4) whether respondent's determination with respect to the proceeds of a lawsuit by *226 petitioner Ferris E. Traylor against Richard Shively are correct; (5) whether petitioner realized taxable income from the stock in Horizon Communications, Inc., and if so the amount thereof; (6) whether petitioners have *137 substantiated various deductions and exemptions claimed on their returns; (7) whether petitioners are liable for additions to tax for negligence or intentional disregard of rules and regulations, for the years 1978 through 1983; and (8) whether petitioners are liable for the addition to tax for substantially understating their tax liabilities for 1982 and 1983. In spite of our standing pre-trial order that all facts should be stipulated to the maximum extent possible, petitioners repeatedly refused to cooperate with counsel for respondent in the preparation of these cases for trial. Consequently, shortly before trial respondent filed a motion under Rule 91(f) for an order directing petitioners to show cause why the matters set forth in respondent's proposed supplemental stipulations numbered first, second, third, fourth, and fifth should not be deemed admitted for the purposes of these cases. After a hearing and several informal conferences with the parties we granted respondent's motion and the facts set forth in respondent's proposed supplemental stipulations numbered first, second, third, fourth, and fifth were deemed admitted for the purposes of these cases. Such facts are *138 incorporated herein by reference. Petitioners resided at 425 West Mashta Drive, Key Biscayne, Florida, at the time of filing their petitions in these cases and during the years 1979 through 1983. For convenience and clarity, our further findings of fact and opinion are combined and arranged in the order in which the issues are listed above. (1) Statute of Limitations
Petitioners filed their income tax return for 1978 on October 17, 1979, and their income tax return for 1979 on June 19, 1980. Respondent's notice of deficiency with respect to the 1978 and 1979 returns was mailed to petitioners on October 10, 1985. Petitioners filed their income tax returns for 1980, 1981, 1982, and 1983 on October 15, 1981; April 7, 1982; April 27, 1983, and August 1, 1984, respectively. Respondent's notice of deficiency with respect to the returns for 1980, 1981, 1982, and 1983 was mailed to petitioners on August 14, 1986. From the foregoing it is apparent that the three-year statute of limitations provided by section 6501(a) [3] had expired with respect to 1978 through 1982 at the time the notices of deficiency were mailed by respondent. However, since petitioners filed their 1983 *139 income tax return on August 1, 1984, and respondent's notice of deficiency with respect to that year was mailed on August 14, 1986, it is equally apparent that the notice of deficiency for 1983 was issued within the three-year period provided by section 6501(a). With respect to the years 1978 through 1982, respondent contends that the notices were timely because the six-year statute of limitations provided by section 6501(e)(1)(A) [4] is applicable. Section 6501(e)(1)(A) is applicable if petitioners omitted gross income for each year in excess of 25 percent of the amount of gross income stated in the returns. *140 For the years 1978 through 1982 petitioners reported the following amounts of gross income: Year
Gross Income
1978
$ 62,293.38
1979
63,234.90
1980
1,805.87
1981
893.96
1982
563.00
1983
846.00
In our consideration hereinafter of the other issues in these cases, we have concluded that petitioners omitted from gross income in each of the years 1978 through 1982 an amount in excess of 25 percent of the gross incomes stated in their returns for such years. Therefore, the six-year period provided by section 6501(e)(1)(A) is applicable and the assessment of deficiencies for the years 1978 through 1982 is not barred by the statute of limitations. (2) Property Developers, Inc.
Petitioner Ferris E. Traylor was the president and chief operating officer of Property Developers, Inc. (PDI) for some time prior to February 15, 1977, the date on which the corporation filed a petition under Chapter XI of the Bankruptcy Act. The corporation's principal business was the management of several restaurants in Indiana. *227 Soon after PDI filed the petition in bankruptcy petitioner resigned from its management and *141 on April 29, 1977, the Bankruptcy Court named Robert J. Otte as the operating officer of PDI. Thereafter petitioner held no office with PDI throughout the years at issue. Furthermore the records of the Bankruptcy Court contain no document authorizing petitioner to act on behalf of PDI or to receive reimbursement for any expense incurred on behalf of PDI. However, during the years 1978 through 1982 PDI paid various expenses incurred by petitioner. The expenses included telephone charges for lengthy and frequent calls between petitioner and his children, travel and entertainment expenses for petitioner and his family and guests, charges to gasoline credit cards and for postage and office supplies, dues and subscriptions, insurance, legal and professional fees, and express mail services. The amount of the payments by PDI to or for the benefit of petitioner during the years at issue totaled as follows: Year
Amount
1978
$ 22,255.75
1979
29,692.86
1980
33,308.50
1981
31,149.58
1982
17,157.77
1983
3,216.91
Petitioner contends that he was authorized by the Bankruptcy Court to seek out business and investment opportunities for PDI and that the reimbursements *142 in question were for expenses incurred while pursuing such opportunities both inside and outside the United States. Petitioner testified that such authorization was given by Judge Gene Brooks of the Bankruptcy Court and his only explanation for the absence of any written record of the authorization was that the court reporter for the Bankruptcy Court had failed to transcribe the order from his tapes or handwritten notes. We allowed the record in this case to remain open for 60 days after trial in order to give petitioners an opportunity to obtain and submit a transcribed copy of such an order or orders. When petitioners failed to submit a transcript of such an order from the Bankruptcy Court within the 60 days, we closed the record. During the 60 day period petitioner did submit an affidavit by Steven H. Ancel, who was counsel for PDI from the commencement of the bankruptcy proceeding in February of 1977 until the summer of 1979 when he withdrew. In the affidavit Mr. Ancel states that at some point during his service as counsel for PDI he and Mr. Otte agreed that because of petitioner's intimate knowledge of PDI's affairs and investments it would be appropriate to reimburse petitioner *143 for the cost of travel, lodging, and other reasonable business expenses when and if such expenses were incurred on behalf of the bankrupt estate. Mr. Ancel further states that during his service as counsel petitioner submitted statements to Mr. Otte, who was responsible for their payment, but if Mr. Otte was uncertain whether an item was appropriate for reimbursement he would contact Mr. Ancel, who would help resolve the matter. Mr. Ancel's affidavit has no probative value because petitioners failed to produce him as a witness and respondent has not had an opportunity to cross-examine him. Rule 143(b). Even if we could consider Mr. Ancel's affidavit as being probative evidence that petitioner was authorized to incur expenses on behalf of PDI, it would be of little value because it covers only one and one-half years of the six years in dispute. Furthermore, it would not serve as evidence that any expense of petitioner that was paid by PDI was actually incurred for the benefit of PDI. Consequently, petitioner has completely failed to carry his burden of proving the nature and amount of any expenses incurred by him for PDI. Rule 142(a). Accordingly, we conclude that respondent *144 correctly determined that the amounts paid by PDI to or on behalf of petitioner and his family are income to petitioners. (3) Pan American Bank Account
On November 24, 1978, petitioners' son Ferris J. Traylor opened a checking account (049-9695420) at Pan American Bank in Miami, Florida. The signature card for the account bears the signature of Ferris J. Traylor, c/o Property Developers, P.O. Box 3447, Evansville, Indiana 47733. The signature card does not bear the signature of either petitioner. However, during 1978 through 1983 checks were deposited to this account which were payable to both petitioners, Ferris E. Traylor and/or Mary V. Traylor. During the same period checks were written on the account to petitioners, to cash and then endorsed by petitioners, and to third parties for the benefit of petitioners or their children. The total deposits made to the Pan American account during the years 1978 through 1983 are as follows: Year
Amount
1978
$  15,108.37
1979
95,122.15
1980
485,221.79
1981
319,818.93
1982
70,997.32
1983
31,000.00
The record is incomplete as to the source of many deposits to the account, but respondent was able *145 to identify the following deposits as having been made with checks made payable to petitioner Mary Vaughan Traylor: *228 Date of Deposit
Amount
December 23, 1978
$ 3,500.00
April 11, 1979
266.67
April 8, 1980
3,408.54
December 21, 1982
108.00
Checks made payable to petitioner Ferris E. Traylor were used to make the following deposits: Date of Deposit
Amount
April 11, 1979
$  4,261.40
May 7, 1979
4,261.40
July 2, 1979
4,261.40
August 3, 1979
5,326.75
August 31, 1979
4,261.40
December 13, 1979
15,000.00
Several deposits to the Pan American account included checks written on the account of Traylor Trusts, Inc., 425 West Mashta Drive, Key Biscayne, Florida 33149. These checks, which were signed by petitioner Ferris E. Traylor, are represented by the following deposits: Date of Deposit
Amount
April 14, 1982
$ 5,000
May 25, 1982
2,000
May 6, 1982
2,000
June 18, 1982
5,000
July 8, 1982
2,500 *
July 22, 1982
2,000
August 4, 1982
2,000
August 13, 1982
2,000
September 16, 1982
3,000
October 1, 1982
5,000
October 21, 1982
3,500
November 10, 1982
3,000
December 3, 1982
6,000
January 11, 1983
3,000
*146 Starting in January of 1983, the following checks signed by Ferris E. Traylor and drawn on the account of Caribbean Ventures Group, Inc., 425 West Mashta Drive, Key Biscayne, Florida 33149, were deposited in the Pan American account: Date of Deposit
Amount
January 27, 1983
$ 4,000
February 14, 1983
4,000
March 18, 1983
6,000
April 8, 1983
5,000
April 28, 1983
2,000
May 23, 1983
5,000
All of the checks represented by the above deposits were payable to petitioner Ferris E. Traylor except the check represented by the deposit of February 14, 1983. That check was payable to "Cash" but was endorsed by petitioner Ferris E. Traylor. During the years 1978 through 1983, the following amounts were withdrawn from the Pan American account by checks made payable to Ferris E. Traylor and endorsed by him, or by checks made payable to "Cash" and endorsed by Ferris E. Traylor: Payable to and
Payable to Cash
Endorsed by
and Endorsed by
Year
Ferris E. Traylor
Ferris E. Traylor
1978
$ 1,065.80
$  1,015.27
1979
900.00
24,359.82
1980
23.44
52,611.84
1981
None
27,871.95
1982
None
1,604.52
1983
None
None
*147 Commencing on July 28, 1980, and continuing through January 15, 1981, monthly billing statements were issued by the law firm of North, Haskell, Slaughter, Young and Lewis to petitioner Ferris E. Traylor, 425 West Mashta Drive, Key Biscayne, Florida 33149. The billing statements, which totaled $ 71,924.58 each contained a notation that: "This statement is for your records only. The TOTAL AMOUNT DUE has been deducted in full from clients' funds." On July 28, 1980, petitioners' son, Ferris J. Traylor, signed a check drawn on the Pan American account in the amount of $ 75,000. The check was made payable to North, Haskell, Slaughter, Young and Lewis and bore the notation "Legal Services." On February 16, 1981, Ferris J. Traylor executed a check for $ 50,000 on the Pan American account. This check was also made payable to the law firm of North, Haskell, Slaughter, Young and Lewis and bears the notation for "Legal Fees." On October 16, 1980, North, Haskell, Slaughter, Young and Lewis issued a billing statement in the amount of $ 337.86 to Ferris E. Traylor, 425 West Mashta Drive, Key Biscayne, Florida. The statement is for legal services rendered through September 30, 1980, to *148 petitioners regarding their personal and 1975 tax matters. On October 24, 1980, petitioners' son, Ferris J. Traylor, executed a check for $ 337.86 on the Pan American account which is payable to North, Haskell, Slaughter, Young and Lewis. The check bears the notation that it is for "Legal-Tax matters." Respondent determined in effect that the Pan American account belonged to petitioners and that the various deposits made to the account which are set out hereinbefore constitute income to petitioners in the year made. Petitioners claim that the Pan American account was solely the property of their son, Ferris J. Traylor; that they did not participate in any way in the account; and that any amounts paid out of the account for their benefit were merely gifts from Ferris J. Traylor. A quick review of the findings set forth above clearly demonstrates that the *229 record before us does not support petitioners on this issue. First, numerous checks made payable to them or made payable to cash and endorsed by them were deposited in the Pan American account during 1978 through 1983. Secondly, numerous checks drawn on bank accounts in the name of Traylor Trusts and Caribbean Ventures *149 Group but signed by petitioner Ferris E. Traylor were deposited to the Pan American account. Thirdly, the address of both Traylor Trusts and Caribbean Ventures Group was the same as petitioners' home address. Fourthly, during the years at issue several checks on the Pan American account were issued directly to petitioners, or to cash and endorsed by petitioners, or to third parties for the benefit of petitioners or their dependents. Fifthly, in the course of her audit of the Pan American account Revenue Agent Jean L. Ubelhor contacted Ferris J. Traylor, the purported owner of the account, and he was unable to furnish any documentation with respect to deposits to the account. Finally, neither Ferris J. Traylor nor any other child of petitioners for whom the account was purportedly held filed gift tax returns with respect to the deposits made to or the expenditures paid from the Pan American account during 1978 through 1983. We conclude, therefore, that respondent's determinations with respect to the Pan American account are correct. (4) Shively Lawsuit
At some date prior to the years in issue petitioner and Richard Shively (Shively) sold Fer-Rich Broadcasting Co. Inc. (Fer-Rich) *150 and certain related companies. Subsequently, a dispute arose between petitioner and Shively with respect to the division of the proceeds of the sale. The dispute led to the institution of a lawsuit in the U.S. District Court for the Southern District of Indiana. The lawsuit was settled by an agreement dated July 19, 1979, which agreement was incorporated into a judgment by the District Court on August 24, 1979. Under the judgment Shively was obligated to pay $ 625,000 to petitioner as follows: $ 125,000 on October 1, 1979, and $ 50,000 on October 1 of each year from 1980 through 1989. Upon entry of the above judgment the following creditors of petitioner attempted to attach the proceeds for application to the claims shown: Name of Creditor
Amount of Claim
Trans Union Leasing Corporation
$  30,000
Midcon Industries, Inc.
897,201
Inland Transportation Services, Inc.
135,000
C.E. Alvey, d/b/a Inland Leasing Co.
340,000
In addition to the above claims, Shively was also notified that there were claims against the judgment for attorney fees and other expenses in unspecified amounts due from petitioner. Accordingly, on October 2, 1979, Shively *151 paid the first installment of $ 125,000 on the judgment into the District Court together with an interpleader action in which petitioner and his creditors were named defendants. On August 20, 1981, petitioner filed in the interpleader action a document entitled "Gift of Interest in Shively Fund," which purported to irrevocably give his interest in the judgment against Shively, Fer-Rich and its related companies (hereinafter referred to as the "Shively Fund") to his children: Charles Vaughan Traylor, Ferris James Traylor, Mary Vaughan Traylor, Marjorie Vaughan Traylor, and Irene V. Traylor, through her guardian, Luis A. DeArmas. On August 20, 1981, an order was entered in the interpleader action in which the District Court found that defendant Ferris E. Traylor had transferred his interest in the Shively Fund by gift to his children and that defendants American Fletcher National Bank, Employers Mutual Liability Insurance Company of Wisconsin, and Walter Scholer and Associates, Inc., had agreed to assign their interests in the fund to said children of Ferris E. Traylor upon receipt of the amounts set forth below: Name of Creditor
Amount
American Fletcher National Bank
$ 140,000
Employers Mutual Liability Insurance
Company of Wisconsin
40,000
Walter Scholer and Associates
20,000
Total
$ 200,000
*152 The District Court then ordered its clerk to distribute the funds on hand in the interpleader action plus any funds thereafter received on the judgment as follows: (a) To American Fletcher National Bank, the amount of $ 140,000; (b) To Employers Mutual Liability Insurance Company of Wisconsin, the amount of $ 40,000; (c) To Walter Scholer and Associates, Inc., the amount of $ 20,000; and (d) The balance, if any, plus any future receipts on the judgment to the children of petitioner as tenants in common. In his notices of deficiency, respondent determined that petitioners received taxable income from the installment payments made by Shively *230 in the amounts of $ 125,000 in 1979 and $ 50,000 in each of the years 1981, 1982 and 1983. [5]
Petitioners argue that since they never received any part of the payments made on the judgment by Shively during the years in dispute such payments cannot be income to them. Their argument is specious, however, because the entire amount of such payments were applied by *153 the District Court to debts of petitioner Ferris E. Traylor or given to his children. Thus with an argument of this nature petitioners cannot overcome the presumption in favor of respondent's determination that the payments constituted income especially where as here the entire transaction has all the characteristics of an anticipatory assignment of income. The use of such a device cannot be used to avoid taxation of income when a taxpayer such as petitioner receives the economic benefit of the income through the payment of his debts and a gift to members of his family. . Accordingly, we conclude that petitioners have failed to establish that respondent's determination on this issue is incorrect. (5) Horizon Communications Stock
In the 1960's petitioner founded Telesis Corp., which later became known as Horizon Communications Corporation (Horizon), and grew to be one of the largest operators of cable television in the United States. Over a period of time control of the corporation was gradually taken over by individuals allegedly connected with the Teamsters Pension Fund until on August 20, 1980, two stock *154 certificates, certificate No. C-020 for 5,000 shares and certificate No. C-021 for 100 shares, were issued by Horizon for petitioner's interest in the company. However, certificate No. C-020 for 5,000 shares was issued in the name of petitioner's son, Ferris J. Traylor, as trustee for himself and the other four children of petitioners, and certificate No. C-021 for 100 shares was issued in the name of petitioner Ferris E. Traylor. Shortly thereafter both stock certificates were attached on behalf of the following creditors of petitioners in an attempt to satisfy their judgments: Name of Creditor
Amount of Judgment
American Fletcher National Bank
$   468,905.38  Midcon Industries
1,300,000.00  C.E. Alvey, d/b/a Inland Leasing Company
340,000.00  Inland Transportation Services, Inc.
135,000.00  Clark Equipment Credit Corporation
1,026,176.00  Richard W. Anderson
27,937.50  Scholer and Associates
55,000.00  Leasing Services Corporation
226,000.00  Employers Mutual Liability Insurance
Company of Wisconsin
149,400.00  Trans Union Leasing Corporation
30,000.00  Total
$ 3,758,418.88  *155 In August of 1981, the children of petitioners borrowed $ 2,000,000 from Merchants National Bank and used the entire proceeds of the loan to settle the claims of the following judgment creditors of petitioners: Name of Creditor
Amount of Settlement
Midcon Industries, Inc.
$   820,000.00     Clark Equipment Credit Corporation
700,000.00     Inland Transportation Services, Inc.
86,755.25     C.E. Alvey, d/b/a Inland Leasing Co.
218,494.75     Richard W. Anderson
15,000.00     Scholer and Associates, Inc.
6,000.00     Leasing Services Corporation
136,750.00     Trans Union Leasing Corporation
17,000.00     Total
$ 2,000,000.00     In the settlement both stock certificates were released by the creditors and used by the children as a collateral for the loan. It will be noted from our previous discussion of the Shively Fund, that the following creditors of petitioners received the amounts shown from that fund: American Fletcher National Bank
$ 140,000
Employers Mutual Liability Insurance
Company of Wisconsin
40,000
Walter Scholer and Associates
20,000
Total
$ 200,000
*156 As a result of both of the above transactions, the claims of the ten creditors of petitioners totaling $ 3,758,418.88 were settled with the payment of $ 2,200,000. In the settlement, the following creditors executed a release or satisfaction of judgment for the unpaid amount of their respective judgment against petitioners: Judgment
Amount
Amount
Creditor
Amount
Paid
Released
American
Fletcher
$   468,905.38
$   140,000.00
$ 328,905.38
Midcon
1,300,000.00
820,000.00
480,000.00
Scholer
55,000.00
26,000.00
29,000.00
Employers
Mutual
149,400.00
40,000.00
109,400.00
Total
$ 1,973,305.38
$ 1,026,000.00
$ 947,305.38
*231 The remaining creditors assigned their respective judgment against petitioners to the Traylor children: Judgment
Amount
Amount
Creditor
Amount
Paid
Assigned
C.E. Alvey
$   340,000.00
$   204,000.00
$ 136,000.00
Inland Trans.
135,000.00
101,250.00
33,750.00
Clark Equip.
1,026,176.00
700,000.00
326,176.00
Richard Anderson
27,937.50
15,000.00
12,937.50
Leasing Services
226,000.00
136,750.00
89,250.00
Trans Union
30,000.00
17,000.00
13,000.00
Total
$ 1,785,113.50
$ 1,174,000.00
$ 611,113.50
*157 In final analysis it is apparent that in 1981 petitioners were relieved of $ 3,758,418.88 in judgment debts by the payment of $ 2.2 million. However, in his notice of deficiency respondent initially determined that stock certificate No. C-020 for 5,000 shares of Horizon stock issued in the name of Ferris J. Traylor was actually owned by petitioner with a basis of $ 699,300. Consequently, in his notice respondent apparently concluded that both certificates had been sold in 1982 to the children for $ 3.8 million (the approximate amount of the debt which the children first assumed and then settled) leaving petitioners with a long-term capital gain of $ 3,100,700. But at trial and on brief respondent appears to have abandoned this position because the record contains no evidence of a purported sale in 1982 and respondent requests no finding to that effect and addresses the issue only tangentially on brief. In his amended answer, respondent sets forth two alternative positions with respect to the transactions involving the Horizon stock. Respondent has the burden of proof on the alternative positions. Rule 142(a). In his first alternative respondent contends, in effect, that if *158 we find that petitioner transferred certificate No. C-020 for the 5,000 shares of Horizon stock to his son, Ferris J. Traylor, as trustee for the Traylor children, by gift in 1976, then under section 61(a)(12) [6] and section 108(e)(4), [7] petitioner realized $ 3,758,418.88 of ordinary income in 1981 in the form of a discharge of indebtedness when petitioner's children acquired the claims of the creditors in the settlement of the controversy over the stock. *159 Respondent's second alternative position is that petitioner was the true owner in substance of both stock certificates prior to August 20, 1981, when the stock was transferred by petitioner to his children for $ 2,000,000. Under this theory petitioner in 1981 would realize a net long-term capital gain of $ 1,300,700 ($ 2,000,000 minus his basis) from the sale of the stock to his children. He would also realize in 1981 ordinary income in the amount of $ 1,558,419 [8] under section 108(e)(4) from the discharge of indebtedness when his children acquired the remainder of his debts. *232 From the record as a whole we are satisfied and so find that respondent's second alternative position is correct. We conclude therefore that with respect to the Horizon stock petitioner in 1981 realized a capital gain of $ 1,300,700 and ordinary income in *160 the amount of $ 1,558,419 from the discharge of indebtedness. (6) Deductions and Exemptions
On their returns for 1978 and 1979 petitioners claimed itemized deductions in the respective amounts of $ 13,402.96 and $ 17,905.54. The itemized deductions included such items as real estate taxes; state, local, and gasoline taxes; general sales taxes; interest expense; and contributions. In his notice of deficiency respondent disallowed all of the deductions for 1978 and $ 17,203.38 of the deductions for 1979. Petitioners have the burden of proving their entitlement to the deductions. Rule 142(a). They have failed to carry their burden since at trial they presented no evidence to substantiate their claims. Accordingly, we have no alternative but to sustain respondent on this issue. For 1982 petitioners claimed a dependency exemption for their daughter, Irene Traylor. Respondent disallowed the exemption. When asked at trial, petitioner stated that he could not remember Irene's birth date or her age in 1982. Since petitioners have the burden of proving their entitlement to the claimed exemption, and have offered no evidence in support thereof, we find for respondent on *161 this issue. For 1978 and 1979 petitioners claimed deductions for casualty losses of $ 48,340.42 and $ 48,729.36, respectively. The deductions in 1978 and 1979 were claimed as carryovers from a fire loss first reported by petitioners on their return for 1975 in the net amount of $ 383,513.28. In an earlier case, respondent disallowed the casualty loss deduction on the 1975 return and petitioners contested the disallowance in a petition to this Court in docket No. 20989-80. In a decision entered in docket No. 20989-80 on November 28, 1983, we concluded that petitioners' casualty loss deduction for the 1975 fire was limited to $ 118,977. In the present case, respondent disallowed the casualty loss carryover deductions to 1978 and 1979 because no part of the amount of the loss as determined in docket No. 20989-80 remained for use in 1978 and 1979. Petitioners did not present any evidence on this issue at trial or address the issue on brief. Consequently, respondent's determination is sustained. Respondent determined that for 1983 petitioners failed to report $ 13 of interest income received from IT&T and $ 336 of interest income received from Purdue National Corporation. Here *162 again petitioners have failed to present any evidence or to address these issues on brief. Therefore, respondent's determination is sustained. (7) Additions to Tax Under Section 6653(a)
In the notices of deficiency respondent determined that petitioners' underpayment of income tax for each of the years 1978 through 1983 was due to negligence or intentional disregard of rules and regulations and that they are liable for the additions to tax provided by section 6653(a), 6653(a)(1) and (2). Under section 6001 taxpayers are required to maintain such books and records as are sufficient to enable respondent to determine their correct tax liability. Furthermore, the failure to maintain the records of income and expense required by section 6001 has been held to constitute negligence within the meaning of section 6653(a). See . From comments made at trial and on brief it appears that petitioner is convinced that his name is on an alleged "enemies list" maintained by the Internal Revenue Service and that respondent's counsel in these cases has a personal vendetta against him and his family. Accordingly, petitioners *163 did not see fit to cooperate with respondent's agents in the examination of their income tax returns for 1978 through 1983 and made no real attempt to submit at trial any books or records which they might have maintained or any other relevant documents in their possession which tended to support their contentions such as cancelled checks or receipts. Since the record contains no evidence to support petitioners' claim of an enemies list or of unfair treatment of petitioners by respondent's agents or counsel and since petitioners failed also to produce any evidence in support of their denial of negligence, we are satisfied from the record as a whole that respondent's determinations with respect to the additions to tax under section 6653(a), 6653(a)(1), and 6653(a)(2) are correct. (8) Section 6661 Additions to Tax
Here again, petitioners have failed to present any evidence with respect to the additions to tax determined by respondent under section 6661 for substantial understatement of tax for 1982 and 1983. Since they have failed to carry their burden of proof under Rule 142(a) we conclude that respondent's determinations on this issue are correct. See . *164 Decisions will be entered under Rule 155. Footnotes
1. Unless otherwise indicated, all section references are to the Internal Revenue Code of 1954 as amended and in effect for the years at issue, and all Rule references are to the Tax Court Rules of Practice and Procedure. This deposit was made with a check bearing the notation "Deposit to Acct F E Traylor 0499695420."
* 50% of the interest due on $ 226,160.92 ** 50% of the interest due on $ 661,793.00 *** 50% of the interest due on $ 12,514.00↩
2. All references to petitioner in the singular are to Ferris E. Traylor.↩
3. The relevant part of section 6501(a) reads as follows: (a) GENERAL RULE. -- Except as otherwise provided in this section, the amount of any tax imposed by this title shall be assessed within 3 years after the return was filed (whether or not such return was filed on or after the date prescribed) * * * and no proceeding in court without assessment for the collection of such tax shall be begun after the expiration of such period.↩
4. The relevant part of section 6501(e)(1)(A) reads as follows: (A) GENERAL RULE. -- If the taxpayer omits from gross income an amount properly includible therein which is in excess of 25 percent of the amount of gross income stated in the return, the tax may be assessed, or a proceeding in court for the collection of such tax may be begun without assessment, at any time within 6 years after the return was filed.↩
5. The record contains no explanation of why a similar determination was not made by respondent with respect to the $ 50,000 payment due on October 1, 1980.↩
6. The pertinent part of section 61(a)(12) reads as follows: (a) GENERAL DEFINITION. -- Except as otherwise provided in this subtitle, gross income means all income from whatever source derived, including (but not limited to) the following items: * * * (12) Income from discharge of indebtedness; * * * ↩
7. The pertinent part of section 108(e)(4) reads as follows: (e) GENERAL RULES FOR DISCHARGE OF INDEBTEDNESS (INCLUDING DISCHARGES NOT IN TITLE 11 CASES OR INSOLVENCY) * * * (4) ACQUISITION OF INDEBTEDNESS BY PERSON RELATED TO DEBTOR. -- (A) TREATED AS ACQUISITION BY DEBTOR. -- For purposes of determining income of the debtor from discharge of indebtedness, to the extent provided in regulations prescribed by the Secretary, the acquisition of outstanding indebtedness by a person bearing a relationship to the debtor specified in section 267(b) or 707(b)(1) from a person who does not bear such a relationship to the debtor shall be treated as the acquisition of such indebtedness by the debtor. * * * (B) MEMBERS OF FAMILY. -- For purposes of this paragraph, sections 267(b) and 707(b)(1) shall be applied as if section 267(c)(4) provided that the family of an individual consists of the individual's spouse, the individual's children, grandchildren, and parents, and any spouse of the individual's children or grandchildren.↩
8. Respondent's amended answer claimed income from the discharge of indebtedness in the amount of $ 1,758,419 under this alternative position but on brief respondent takes into account the $ 200,000 payment to creditors from the Shively Fund and correctly states the amount of income from the discharge of indebtedness as $ 1,558,419.↩